## John Rabon, *vs* The State.

A writ of error in a criminal case, taken under the provisions of the Act of 1847, operates *ipso facto* as a *supersedeas*, upon the defendant complying with the conditions prescribed in the 4th Section of the Act, and it is to be recognized and obeyed as such, by the ministerial officers of the law, without the necessity of a special order, in relation thereto.

This was a motion made in behalf of Rabon, for an order

to make the writ of error in this case a supersedeas. The facts on which the motion was based appear in the opinion of the Court.

*B C. Pope* for the motion.

DuPont, J., delivered the opinion of the Court:

The appellant had been indicted in the Circuit Court upon a charge of murder—was tried, convicted and sentenced to be hung. He sued out a writ of error, and in order that he might have the benefit thereof, a reprieve was obtained, postponing the time appointed for the execution of the sentence, to a day posterior to the commencement of the term of this Court. Upon the calling of the case for argument, it was discovered that the record was so defective, that no judgment could be rendered thereon. The case was accordingly continued for the term, and a certiorari ordered to bring up a perfect record. In this state of case, the counsel for the appellant moved for an order to make the writ of error a *supersedeas* until the case could be heard by the Court. This motion involves an interpretation and construction of the Act of 1847, which gives to the defendant the right to a writ of error in criminal cases.

The second section of the Act provides, "That in all cap-"ital cases writs of error shall be writs of right, and re-"move the record of said cause to the Supreme Court, and "they shall issue on the application of the defendant."

The third section provides, "That a party convicted of "crime or misdemeanor *not capital* shall be entitled to a "writ of error to the Supreme Court, upon complying with "the following terms: He shall obtain from the Clerk a "copy of the record of the case, duly certified, and cause the "same, together with an assignment of the errors relied on "for reversal of the judgment, to be presented to the Su-"preme Court or to one of the Justices thereof, and if such "Court or Justice, upon inspection of the record, shall be of "opinion that there is just cause for allowing a writ of er-

"ror, he shall so indorse on such record, and thereupon a " writ of error shall issue from either the Circuit or Supreme " Court."

The fourth sections provides, " That in no case, whether " capital or not, shall any such writ of error be a *supersedeas* "to the execution of the judgment, sentence or order com- "plained of, except upon payment by such plaintiff in error "of all the costs which have accrued in such case, up to " that time, and upon securing by recognizance, to be en- " tered into with one or more sureties, according to law, be- "fore the Clerk of the Circuit Court, in a sum sufficient to " secure the payment of such judgment, fine and future costs "as may be adjudged in the Supreme Court, and also con- " ditioned that the said party shall be personally forthcom- " ing," &c. ; " *Provided,* That in cases where capital pun- "ishment is by the judgment or sentence of the Court, or- " dered to be inflicted, the person of the defendant shall be " the only security required for his forthcoming to answer " as aforesaid."

By a careful examination of these several sections of the act, it will be perceived that nothing is said with respect to the necessity of obtaining an *order* for a *supersedeas* in eith- er case, capital or not. The only order mentioned, or which seems to be contemplated upon the presentation of the re- cord, in cases not capital, is for the issuing of the *writ of er- ror*, which *ipso facto* operates as a supersedeas upon the defendant's complying with the *conditions* prescribed in the fourth section. If in this class of cases the mere granting of the writ will operate to suspend the proceedings, much more it would seem, ought it to have that effect in a .case involving life. Indeed in the latter case, a writ of error would prove of little avail to a defendant, unless it also sus- pended the execution of the sentence, until the errors com- plained of could be investigated and determined upon by the appellate tribunal, for it would be but a solemn mockery of

justice to enter upon the investigation, whether the defendant had been duly and properly convicted and sentenced, months perhaps after he had fully satisfied the sentence of the Court by a forfeiture of his life. No reversal of the judgment could by any means restore to him his forfeited life, and we cannot believe that an enlightened Legislative body could ever have contemplated a result so shocking to the feelings of humanity.

That a party convicted of a capital offence, should at his option, have it in his power to suspend and postpone the sentence of the law, we think is a provision of very doubtful policy. But it is not our province to find fault with, much less to amend the law. We must administer it as we find it written, and if this provision of the Act should be found to operate injuriously to the public interest, the law making power will doubtless apply the proper remedy.

The result of our views is, that the writ of error, *ipso facto* operates as a *supersedeas* upon the defendant's complying with the conditions prescribed in the 4th section of the Act, and that it is to be recognised and obeyed as such by the ministerial officers of the law, without the necessity for any special order in relation thereto.

Let the motion for a supersedeas be dismissed·